## THE STONEWALL.

### THE KILL VON KULL.

LEE & SIMMONS, Inc., v. NEW YORK & NEW JERSEY STEAMBOAT CO. et al.

No. 10695.

District Court, E. D. New York.

March 24, 1930.

Frederick W. Park, of New York City, for libelant.

Alexander, Ash & Jones, of New York City, for claimant.

Burlingham, Veeder, Masten & Fearey, of New York City, for respondent-impleaded.

BYERS, District Judge.

During the early afternoon of June 20, 1927, the libelant's barge Stonewall was lying on the up-river side of Pier No. 31 East River, bow in; directly ahead lay another barge not involved in this cause. Close alongside of the former, to starboard, lay a New York Central barge, and directly forward of that lay a New Jersey Central barge, No. 304. The Stonewall and the New York Central barge occupied that portion of the slip lying south of one of the piers of the Manhattan Bridge; between the latter and the shore line, there was open water, in a portion of which the claimant Kill Von Kull was accustomed to berth at the up-river extremity of that space. Between the side of the New York Central barge and the pier, there had been sufficient space to admit of entrance and egress by the Kill Von Kull during the period of time that the two barges had occupied the positions indicated.

On the afternoon in question and during the ebb of the tide, the claimant so maneuvered, in an attempt to leave the slip, as to wedge herself in the space between the pier and the New York Central barge; that is to say, the claimant penetrated the opening between the barge and the pier to the extent of about twenty feet, traveling under one bell and moving slowly ahead, the speed being estimated at between three and four miles an hour.

The captain of the claimant sought to free his vessel from the jam, and requested the New York Central barge and the Stonewall to slack their lines, but was unable to free his vessel from the jam.

It will be seen that, because the tide was falling, it was inevitable that his vessel should become more firmly established in this position with the passage of time.

The captain of the claimant 'phoned for a tug, and the W. F. Dalzell arrived within the space of an hour, and performed services which released the claimant from the jam, and the manner in which those services were rendered gave rise to the filing of a petition to implead the Dalzell Towing Co., Inc., and to hold it responsible for the damages suffered by the barge Stonewall.

The testimony of the claimant is that the tug sought to break the jam by first shoving gently head on, first against the New York Central barge, and then against the Stonewall, and, having failed to break the jam in this way, by steaming under greater speed directly against the barges, in turn, for the purpose of forcing them shorewards; it is alleged by the claimant that it was the impact of the tug against the stern of the Stonewall which resulted in the damage to the latter.

The testimony of the captain of the tug is to the effect that he never maneuvered his vessel in the manner described, but that his efforts were confined solely to pushing against

the starboard bow of the Kill Von Kull with the aid of a hawser rigged from the stem of the Kill Von Kull to the bow of the tug in such a manner that the strain on the hawser exerted a sternway pull which loosened the Kill Von Kull from the jam.

The testimony of the captain of the Kill Von Kull as to what the tug did is qualified by the captain's admission that he is not sure that he saw the tug pushing or thrusting against either of the barges in question.

The physical aspect of the problem presented to the captain of the tug clearly indicates the probability that his testimony is correct; here was a jam composed of three elements, two of them square-ended and parallel to each other, and the third wedge-shaped; clearly, the wedge-shaped element was the one which could be more easily dislodged than either of the others, and the application of force to that element was necessarily indicated.

The hypothesis above stated would not be seriously opposed by the claimant except for the nature of certain of the injury done to the Stonewall, from which the proctor for the claimant reasons that the impact must have been the result of a blow delivered with fore and aft force rather than of lateral pressure exerted by the Kill Von Kull through the New York Central barge upon the Stonewall, thrusting it against Pier 31; in this connection, he calls attention to the fact that certain of the timbers broken on the barge could not have buckled as the result of a lateral pressure, but must have been broken, as stated, by a fore and aft blow.

The captain of the Stonewall testified that he felt the jam on his barge as soon as the Kill Von Kull tried to emerge from the slip; and, at that time, he heard cracking in the planks of his boat on the side nearest the pier, while the Kill Von Kull was working back and forth, trying to get out.

The testimony of the captain of the tug is corroborated by his mate, namely, that the captain sent his mate aboard the barges to investigate the relative positions of all vessels before attempting to push the Kill Von Kull out of the jam, and the mate reported the positions of the two barges directly involved as heretofore stated, and also the fact that there were two other barges between them and the inshore end of the slip.

It must be clear that, in order to push or ram either the Stonewall or the New York Central barge, the other two barges just referred to would have had to be moved from their berths, and no one contends that that was done.

A careful consideration of the testimony, in the light of all the exhibits, leads to the conclusion that the damage was caused, not by the tug in its efforts to dislodge the Kill Von Kull, but by the latter when she first attempted to emerge from the slip, and that the captain either miscalculated the available space between the New York Central barge and the pier, or failed to take into consideration that, upon an ebb tide, he could not hope to effect a passage through a constantly diminishing opening. For this reason the libel and the petition against the Dalzell Towing Co., Inc., will be dismissed with costs, and the usual interlocutory decree may be entered against the claimant, with costs.